

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

February 9, 1967

Honorable Joe Resweber
County Attorney
Harris County
Houston, Texas

Dear Mr. Resweber:

Opinion No. M-21

Re: Tax status of building
owned by the Diocese of
Galveston-Houston, Roman
Catholic Church.

In connection with your request for the opinion of this office on the above-captioned matter, you have furnished us with numerous facts. The property which occasioned your request is known as the "Chancery," located at 1700 San Jacinto Street, Houston, Texas. We quote the following excerpt from the Memorandum Brief which accompanied your request:

"The Assessor and Collector of Taxes, Harris County, Texas, by letter, furnished the following information:

"'It is noted that the City of Houston has rejected the request for the building, known as the Chancery, which is used for the following purposes:

"'(1) Office to conduct the necessary work of maintaining the Diocese of Galveston-Houston, including its seminary and orphanage;

"'(2) Office of Superintendent of Catholic Schools of the entire diocese;

"'(3) Office of the Matrimonial Tribunal of the diocese;

"'(4) Offices for the Catholic Youth Organization, the Saint Vincent de Paul Society, the Confraternity

- 86 -

> of Christian Doctrine, the National
> Council of Catholic Men, the National
> Council of Catholic Women and the
> Diocesan Catholic paper;
>
> "'(5) Meeting rooms for Catholic organi-
> zations;
>
> "'(6) Residence of the Chancellor and
> three other priests;
>
> "'(7) A chapel where religious services
> for the public are held.'"

In the Memorandum Brief which you have furnished us, you have concluded that the property in question is not entitled to an exemption from state and county ad valorem taxes under Section 1 of Article 7150, Vernon's Civil Statutes.

Section 2 of Article VIII of the Texas Constitution authorizes the Legislature to exempt certain classes and types of property from taxation. The pertinent provisions of this section read as follows:

> ". . . the Legislature may by general
> laws, exempt from taxation . . . actual places
> or [of] religious worship, also any property
> owned by a church or by a strictly religious
> society for the exclusive use as a dwelling
> place for the ministry of such church or reli-
> gious society, and which yields no revenue
> whatever to such church or religious society;
> provided that such exemption shall not extend
> to more property than is reasonably necessary
> for a dwelling place and in no event more than
> one acre of land; . . ."

The following provisions of Article 7150, V.C.S., were enacted in pursuance to the above quoted authorization:

> "The following property shall be exempt
> from taxation, to-wit:
>
> "1. Schools and Churches -- Public
> School houses and actual places of religious

worship, also any property owned by a church
or by a strictly religious society, for the
exclusive use as a dwelling place for the
ministers of such church or religious society,
the books and furniture therein and the grounds
attached to such buildings necessary for the
proper occupancy, use and enjoyment of the same,
and which yields no revenue whatever to such
church or religious society; provided that such
exemption as to the dwelling place for the minis-
ters shall not extend to more property than is
reasonably necessary for a dwelling place and
in no event more than one acre of land . . . ."

An additional provision for exemption is contained in
Article 7150b, V.C.S., which reads as follows:

"There is hereby exempted from taxa-
tion any property owned exclusively and in
fee by a church for the exclusive use as a
dwelling place for the ministry of such church
and which property yields no revenue whatever
to such church; provided that such exemption
shall not extend to more property than is rea-
sonably necessary for a dwelling place and in
no event more than one acre of land; and pro-
vided further, that the fact that the ministry
uses a portion of the dwelling as their study,
library or office shall not prevent the property
from being considered as being used exclusively
as a dwelling place. For purposes of this Act,
'church' includes a strictly religious society;
and the 'ministry of such church' means those
persons whose principal occupation is that of
serving in the clergy, ministry, priesthood or
presbytery of an organized church or religion,
whether they are assigned to a local church
parish, synagogue, cathedral or temple or to
some larger unit of the church organization and
whether they perform administrative functions
or not."

In reaching your conclusion that exemption should be
denied, you make the following statement:

"The property in question and the organi-
zation occupying same is in many respects
similar to the property for which an exemp-
tion from State and County ad valorem taxa-
tion was being sought in Daughters of St.
Paul, Inc. v. City of San Antonio, 387 SW2d
709 (Tex.Civ.App. 1965, error ref., n.r.e.)."

We do not regard Daughters of St. Paul, Inc., as deci-
sive of the question here under consideration. In that case
the court was concerned with whether a building owned by a
non-profit corporation whose primary purpose was distribution
of Roman Catholic literature and religious articles principally
by sale but also by gift to the general public was exempt from
ad valorem taxes. The building was used exclusively by the cor-
poration for sale of books and for nuns' living quarters. The
court held that, under the facts, the property was not exempt
as an "institution of purely public charity" within the meaning
of that phrase as it is used both in Section 2 of Article VIII
of the Texas Constitution and Section 7 of Article 7150, V.C.S.

Since there is a chapel in the Chancery where religious
services for the public are held, we think different provisions
of both the Constitution and the statutes are applicable, to-wit:
the provisions for "actual places of religious worship." We
assume that in order for religious services for the public to be
held, the Roman Catholic liturgy and ritual is practiced
regularly in the Chancery, that it is open to the public and
meets all requirements of canon law relative to churches. It is
certainly not uncommon for churches to have rooms available for
other church activities in addition to the sanctuary. The other
activities which you have described and which are being carried
on in the Chancery are not inconsistent with work of the Church,
and we do not think that the fact that they are carried on in
the same building which houses the actual place of religious
worship results in a loss of the tax exemption.

We are further of the opinion that the Chancery might
well be exempt under the provisions of Article 7150b, which
specifically provide that the "ministry of such church" includes
persons serving in the clergy, ministry, priesthood or presby-
tery of an organized church or religion, and further specifically
provide that they need not be assigned to a local church parish
in order to qualify for the exemption, but may be assigned to
some larger unit of the church organization, as is true in the
case here under consideration.

We do not think that the fact that the Chancery is not used exclusively as a dwelling place by the Chancellor would preclude exemption. It seems clear that the Legislature intended that the living quarters for the ministry of a church were to be exempt; so we cannot see that if a parsonage were attached to a church it would lose its exempt status as not being used "exclusively" as a dwelling because of the church, or that the church would lose its exemption as an actual place of religious worship because of the parsonage.

Analogous reasoning was used in Attorney General's Opinion No. O-4909 (1943), which held that a school which contained a chapel was exempt from ad valorem taxes. We quote the following from page 2:

> "Clearly the property in question is tax exempt unless it be decided that the use of the chapel for religious exercises, in addition to the use of the entire building for school purposes, destroys the exemption. The building if used exclusively for either purpose would be tax exempt and we are not prepared to hold that the concurrence of the two exempt uses renders the property liable to taxation."

Attorney General's Opinion No. O-6211 (1944) held exempt from ad valorem taxes a building owned by a church situated on the same tract of land as the church building and dwelling place of the minister. The hall in question was used for "parish meetings, meetings of Catholic Societies, Maternity Guild, Catholic Action, Catholic organizations, Catholic Union of Texas, religious instruction to children, socials; plays and once to twice yearly picnic dinners and dances are held."

In holding, as we do, that the Chancery is exempt from ad valorem taxes, we specifically limit our holding to the particular facts submitted for our consideration.

### S U M M A R Y

Under the submitted facts, the building known as the "Chancery" owned by the Diocese of Galveston-Houston, Roman Catholic Church,

is exempt from ad valorem tax. Section 2, Article VIII, Texas Constitution; Articles 7150 and 7150b, Title 122, Ch. 6, V.C.S.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Marietta McGregor Payne
Assistant Attorney General

APPROVED:
OPINION COMMITTEE
Hawthorne Phillips, Chairman
W. V. Geppert, Co-Chairman
Arthur Sandlin
Ralph Rash
Malcolm Quick
Kerns Taylor

Staff Legal Assistant
A. J. Carubbi, Jr.